# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF AMERICA, N.A., )
    )
    Appellant, )
    )
    v. )  2:11-cv-1338-RCJ-PAL
    )
AUGUST B. LANDIS, UNITED STATES )  **ORDER**
TRUSTEE, REGION 17, )
    )
    Appellee. )
_____

Currently before the Court is an appeal (#12) from a bankruptcy order denying Bank of America, N.A.'s ("BANA") motion to quash a subpoena issued by the United States Trustee under Federal Rule of Bankruptcy Procedure 2004. The Court heard oral argument on December 2, 2011.

## BACKGROUND

On February 2, 2011, Alejandro Molinar ("Debtor") filed a Chapter 13 petition, 2:11-bk-11523, in the United States Bankruptcy Court of the District of Nevada. (Voluntary Petition (BK #1)).[1] In the schedules accompanying the petition, Debtor listed BANA as a creditor holding a first mortgage on his personal residence. (Schedule D (BK #1) at 17). On March 7, 2011, BANA filed a proof of claim in Debtor's bankruptcy asserting a secured claim in the amount of $55,993.76 and attaching a declaration that the written documentation substantiating the claim had been "lost or destroyed" and that it had conducted a "diligent search." (*See* Opening Brief (#12) at 12; Resp. Brief (#23) at 15). BANA requested that the

---

[1] Documents in the bankruptcy court will be referenced as "BK #__."

bankruptcy court authorize it to provide a copy of an account record in lieu of providing legal documents substantiating the claim. (*See* Resp. Brief (#23) at 15). On March 18, 2011, the Acting United States Trustee ("UST") filed an *ex parte* motion for an order authorizing a Fed. R. Bankr. P. 2004 examination of BANA because BANA had failed to attach an account record to the proof of claim. (First 2004 Mot. (BK #16) at 2). The bankruptcy court granted the motion. (First 2004 Order (BK #17)).

On March 30, 2011, BANA amended its proof of claim and attached copies of both the promissory note and deed of trust evidencing Debtor's debt to BANA. (*See* Opening Brief (#12) at 13; Resp. Brief (#23) at 15). The promissory note documented a debt of $48,400. (*See* Resp. Brief (#23) at 15).

On May 19, 2011, the UST filed a second *ex parte* motion for order authorizing a Rule 2004 examination of BANA. (Second 2004 Mot. (BK #41)). The UST argued that BANA had filed an amended proof of claim and had attached the same documents that it had previously declared were "lost or destroyed" and that had been unrecoverable after a "diligent search." (*Id.* at 3). The UST argued that BANA had provided no explanation as to why its original proof of claim sought $55,993.76 when only $48,400 was listed on the promissory note. (*Id.*). The UST argued that it had standing to conduct a Rule 2004 examination and good cause to examine BANA based on its previous declaration that the note and deed of trust had been lost and the discrepancy between the purported secured claim and the promissory note. (*Id.* at 3-7). The bankruptcy court granted the motion. (Second 2004 Order (BK #42)).

The UST issued a subpoena for the Rule 2004 examination and commanded production of seven categories of documents with eight topics for examination. (Subpoena (Ex. A) (BK #48-1) at 7-8). The UST demanded the production of the following documents:

(1) All documents, books, papers and records BOA [BANA] reviewed, referenced or otherwise relied on to prepare: (1) BOA's Proof of Claim; and (2) BOA's Amended Proof of Claim.

(2) A complete loan history for the loan referenced in BOA's Amended Proof of Claim (commonly called a "pencil ledger"), complete with all outstanding charges, fees, principal and interest due and owing and any other charges claimed by BOA to be owed together with a history of all payments made by any entity to BOA for credit against such loan

    balance, regardless of whether or not such payments were actually credited by BOA against the outstanding loan balance.

 (3) Copies of all correspondence in BOA's possession, to or from any person—including but not limited to the Debtor, any agent of BOA, any employee of BOA, or any third party—regarding: (1) the loan referenced in BOA's Amended Proof of Claim; (2) the Declaration of Doris Steeple; (3) the loss or destruction of "[d]ocumentation of account obligations" described in the Declaration of Doris Steeple; and (4) the "diligent search" and the "reasonable inquiry" described in the Declaration of Doris Steeple.

 (4) Copies of any and all notes or documents made by BOA employees, or of any agent employed by BOA, to review or otherwise manage or service the loan referenced in BOA's Proof of Claim, regarding the amounts due under the loan; the calculation of any principal, interest, fees or other charges, before and after the date of filing of the bankruptcy case; the calculation of or application of any payments made against the loan balance or any charges arising under the promissory note; together with any notes evidencing or regarding any communications with the Debtor or Debtor's counsel, whether such communications were oral or written, to the extent these notes were not produced in response to request number 4.

 (5) All documents that reflect BOA's policies, practices, and procedures regarding: (1) the preparation and filing of proofs of claim, such as BOA's Proof of Claim; and (2) the preparation and filing of amendments to proofs of claim, such as BOA's Amended Proof of Claim.

 (6) All documents that reflect BOA's policies, practices, and procedures regarding: (1) the filing of proofs of claim when documentation of account obligations has been lost or destroyed; (2) searches for, and inquiries about, documentation of account obligations; (3) preparing and filing declarations of lost or destroyed account obligations, such as the Declaration of Doris Steeple.

 (7) All documents which evidence the authority of Ms. Wall to act as the representative of BOA, for purposes of filing BOA's Proof of Claim.

(*Id.* at 7). Per the subpoena, BANA was required to provide a witness who could testify to the following:

 (1) The information contained in, and the authenticity of, the documents produced by BOA in response to the Subpoena.

 (2) The nature and extent of BOA's purported security interest in the property described in documents filed in support of BOA's Amended Proof of Claim.

 (3) Arrearage and other charges associated with BOA's Amended Proof of Claim, and with any subsequent amendments thereto.

 (4) The preparation of BOA's Proof of Claim, the preparation of BOA's Amended Proof of Claim, and any subsequent amendments thereto.

  (5) Information relied upon by BOA and/or its employees and authorized agents, in preparing BOA's Proof of Claim, BOA's Amended Proof of Claim, and any subsequent amendments thereto.

  (6) The person(s) involved in the preparation and filing of BOA's Proof of Claim, BOA's Amended Proof of Claim, and any subsequent amendments thereto.

  (7) BOA's policies, practices, and procedures regarding the preparation and filing of BOA's Proof of Claim and BOA's Amended Proof of Claim, including policies, practices and procedures concerning lost or destroyed writings.

  (8) BOA's policies, practices, and procedures related to collection on the Debtor's accounts in the above-captioned case.

(*Id.* at 8).

  In June 2011, BANA filed a motion to reconsider and motion to quash the subpoena. (Mot. to Quash (BK #48) at 1). BANA argued that the UST lacked standing to seek a Rule 2004 examination because the UST was not a "party in interest." (*Id.* at 2). BANA argued that both the Bankruptcy Code and the Rules of Bankruptcy Procedure established that the UST was not a party in interest. (*Id.* at 3). BANA asserted that the legislative history confirmed that the UST was not a party in interest and that 11 U.S.C. § 307 did not grant the UST authority to take a Rule 2004 examination. (*Id.* at 4-5). BANA argued that the UST failed to establish good cause for the Rule 2004 examination. (*Id.* at 7). BANA also objected to the list of documents to produce because the scope of the requested documents had exceeded the UST's stated inquiry concerning the difference between its secured claim and the principal amount in the promissory note. (*Id.* at 12-16). BANA objected to the topics of examination because the scope of the topics had exceeded the stated inquiry and the topics were irrelevant nor reasonably calculated to lead to the discovery of admissible evidence. (*Id.* at 16-19).

  On July 12, 2011, the bankruptcy court held a hearing on the motion to reconsider and motion to quash subpoena. (*See* Transcript (BK# 60)). The bankruptcy court stated that it was going to deny the motions and stated the following:

> I appreciate Bank of America's position, but their focus is somewhat tunnel vision in the sense that they view real party in interest and the permissible scope of inquiry as simply the debtor/creditor relationship between the debtor and the creditors.
> . . .

4

> Thus, I don't see this as simply a debtor/creditor matter. I see this as a regulatory and oversight matter for which I think Section 307 is well-suited and an appropriate source of the power to seek an examination under Rule 2004 swayed in that by the U.S. Trustee's I think true contention, you know, that that is the great weight of case authority behind it.

(*Id.* at 15-16).

After the hearing, the bankruptcy court entered an order denying BANA's motion to reconsider and motion to quash the subpoena. (Order (BK #63)). The bankruptcy court found that the UST was a party in interest for purposes of Rule 2004 and that Rule 2004 was an investigative function committed to the Office of the United States Trustee under 28 U.S.C. § 586. (*Id.* at 2). The bankruptcy court found that 11 U.S.C. § 307 gave the UST authority and power to seek an examination under Rule 2004 and that such an examination did not encroach upon the province and duties of the Chapter 13 Trustee. (*Id.*). The bankruptcy court found that the UST had good cause to support the documents enumerated in its subpoena and to support the scope of its examination. (*Id.*). The bankruptcy court found that the examination topics were appropriate given the UST's statutory role as "watchdog" of the bankruptcy system. (*Id.*).

BANA filed a notice of appeal asserting that the UST was not authorized to take Rule 2004 examinations because it was not a party in interest. (Notice of Appeal (BK #65) at 13-22).

## ISSUES ON APPEAL

(1) Whether the UST is a "party in interest" for purposes of Fed. R. Bankr. P. 2004 with the authority to conduct a Rule 2004 examination.

(2) Whether the scope of the UST's Rule 2004 examination in this case exceeds the UST's authority to conduct such examinations.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's interpretation of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure *de novo* and its factual findings for clear error. *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009); *In re Krause*, 546 F.3d 1070, 1073 n.5 (9th Cir. 2008).

5

This Court reviews a bankruptcy court's decision to order a Rule 2004 examination for an abuse of discretion. *In re Metiom, Inc.*, 318 B.R. 263, 267 (S.D. N.Y. 2004); *see also In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008) (holding that a court reviews a bankruptcy court's evidentiary rulings for an abuse of discretion).

## DISCUSSION

**I. Whether the UST is a "party in interest" for purposes of Fed. R. Bankr. P. 2004 with the authority to conduct a Rule 2004 examination**

On appeal, BANA argues that the UST has no authority to take a Rule 2004 examination. (Opening Brief (#12) at 16). BANA argues that the UST is not a party in interest and states that the Bankruptcy Code and Rules distinguish between a party in interest and the UST. (*Id.* at 17-19). BANA asserts that 11 U.S.C. § 307 does not authorize the UST to conduct Rule 2004 examinations because § 307 only grants the UST standing to exercise its enumerated statutory powers. (*Id.* at 21-22). BANA contends that § 307 establishes standing not authority. (*Id.* at 26).

In response, the UST argues that it has statutory standing and power to conduct Rule 2004 examinations and to seek documents in support of such examinations. (Resp. Brief (#23) at 26). The UST asserts that § 307's grant of standing includes the power to take Rule 2004 discovery and cites to various cases that have held that the UST is a party in interest. (*Id.*). The UST argues that multiple courts have recognized the UST's governmental watchdog role to protect the public interest in bankruptcy and, thus, the authority to take discovery. (*Id.* at 29). The UST provides a list of federal courts who have rejected the same arguments made by BANA in this case. (*Id.* at 30-32). The UST argues that several sections of the Bankruptcy Code confirm that the UST is a party in interest. (*Id.* at 32-33). The UST contends that the limitation that a party in interest is only a party who has a pecuniary interest in a bankruptcy case does not apply to the United States. (*Id.* at 35).

In reply, BANA disputes the UST's interpretation of the case law and statutes. (Reply Brief (#28)).

Federal Rule of Bankruptcy Procedure 2004 provides that "[o]n motion of any party in

interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004. The Bankruptcy Code does not define a "party of interest." *See* 11 U.S.C. § 101. Additionally, neither the Supreme Court nor the circuit courts have addressed whether the UST is a party in interest for Rule 2004 purposes.

The Bankruptcy Code and Rules are inconsistent in addressing whether the UST is a party in interest. There are statutes and rules that distinguish between the UST and a party in interest. To illustrate, 11 U.S.C. § 330(a)(1) provides that "[a]fter notice to the parties in interest *and* the United States Trustee . . . ." 11 U.S.C. § 330(a)(1). Section 521 provides that "[a]t the request of the court, the United States trustee, *or* any party in interest . . . ." 11 U.S.C. § 521(f). Section 1105 provides that "on request of a party in interest *or* the United States trustee." 11 U.S.C. § 1105. Bankruptcy Rule 2003(f) provides that "[t]he United States trustee may call a special meeting of creditors on request of a party in interest *or* on the United States trustee's own initiative." Fed. R. Bankr. P. 2003(f). Bankruptcy Rule 2007.1 provides that "[t]he application shall be accompanied by a verified statement of the person appointed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, *or* any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2007.1(c).

On the other hand, the Bankruptcy Code also includes sections that imply that the UST is a party in interest. To illustrate, 11 U.S.C. § 330(a)(2) provides that "the United States Trustee, . . . *or any other* party in interest." 11 U.S.C. § 330(a)(2). Section 1121 provides that "the debtor, after providing notice to parties in interest (*including* the United States trustee)." 11 U.S.C. § 1121(e)(3)(A). Section 707 provides that "in contesting a motion filed by a party in interest (*other than* a trustee or United States trustee (or bankruptcy administrator, if any))." 11 U.S.C. § 707(b)(5)(A).

The federal courts that have addressed the issue at hand have all found that the UST is a party in interest for Rule 2004 purposes. BANA has not cited to any cases that have found otherwise, nor does there appear to be any. In finding that the UST is a party in interest for Rule 2004 purposes, courts have relied on 11 U.S.C. § 307. Section 307 provides that

"[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title." 11 U.S.C. § 307.

In *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D. Pa. 2008), the bankruptcy court found that the UST did have the authority to seek and obtain a Rule 2004 examination in the proper circumstances. *Id.* at 384. Relying on § 307, the bankruptcy court found that § 307 was "written in extremely broad language. Indeed, it is difficult to conceive of how Section 307 could have been written in any broader language." *Id.* The bankruptcy court had "no difficulty concluding that the plain meaning of the power to 'raise' and to 'appear and be heard' as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to Rule 2004 in the right circumstances." *Id.* The bankruptcy court rejected Countrywide's argument that § 307 only provided standing to the UST. *Id.* The bankruptcy court found that "the most natural and plain meaning of Section 307 is that of a grant of expanded power" to the office of the UST. *Id.*

When addressing a Code section that did not state whether the UST was a party in interest, the Seventh Circuit held that the UST "can be a 'party in interest' when he seeks to protect the rules and procedures of bankruptcy, over which he is the congressionally ordained watchdog—he has a statutory interest in making sure that bankruptcy law isn't abused." *In re South Beach Sec., Inc.*, 606 F.3d 366, 371 (7th Cir. 2010) (referring to 11 U.S.C. § 1109(b) which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter").

In this case, the UST is a "party in interest" for Rule 2004 examination purposes. First, § 307 is broadly written and plainly states that the UST "may raise and may appear and be heard on any issue in any case." 11 U.S.C. § 307. Second, the courts that have addressed the issue at hand have recognized § 307's broad language. Third, the UST in this case sought a Rule 2004 examination to ensure that BANA was not abusing the bankruptcy laws. Since

the beginning of this case, the UST has voiced its concerns with BANA's claims that it had inadvertently lost or destroyed the legal documents substantiating its proof of claim, yet when challenged, BANA immediately produced the allegedly lost and destroyed promissory note and deed of trust. In ensuring that the bankruptcy laws were not abused, the UST sought to discover why BANA's original proof of claim was for approximately $7,500 more than it was legally entitled to via the promissory note. As such, the Court holds that the UST is a party in interest for Rule 2004 examination purposes and affirms the bankruptcy court's ruling.

## II. Whether the scope of the UST's Rule 2004 examination in this case exceeds the UST's authority to conduct such examinations

BANA argues that, even if § 307 authorizes the UST to take a Rule 2004 examination, the UST must gather information that is relevant to the administration of a particular bankruptcy case. (Opening Brief (#12) at 30). BANA asserts that the UST is attempting to examine BANA as a part of a wide-ranging, nationwide, quasi-regulatory investigation of the internal practices and procedures of BANA and other mortgage lenders and servicers. (*Id.*).

In response, the UST asserts that good cause exists for the Rule 2004 motion because its inquiry concerns BANA's relationship with Debtor in this particular case. (Resp. Brief (#23) at 17-18).

Pursuant to Rule 2004, the scope of the examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

"Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). To determine whether good cause exists, a court must consider the totality of the circumstances, taking into account all relevant factors. *Countrywide*, 384 B.R. at 393. "Under this standard[,] inquiries that are tightly-focused on the creditor's relationship with a particular debtor will require a relatively low level of good cause because they represent a low level of intrusion into

9

the creditor's business affairs and a low risk of abuse." *Id.* "Inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse." *Id.*

In this case, the bankruptcy court abused its discretion by denying BANA's motion to reconsider and motion to quash the subpoena. The scope of a Rule 2004 examination is limited to the debtor-creditor relationship as specifically outlined in Rule 2004. *See* Fed. R. Bankr. P. 2004(b). Rule 2004 does not permit a party in interest to conduct a nationwide investigation into policies, procedures, and conduct unrelated to the bankruptcy case at hand. Because the bankruptcy court found that the matter at hand exceeded the scope of the debtor-creditor relationship and that the UST could use Rule 2004 as a regulatory tool to inquire beyond the debtor-creditor relationship, this Court finds that the bankruptcy court applied the wrong standard in determining the bounds of discovery. (*See* Transcript (BK#60) at 15-16). As such, this Court holds that the bankruptcy court abused its discretion and reverses the order denying the motion to reconsider and motion to quash.

The Court notes that the UST does have an interest in regulating matters in a particular bankruptcy proceeding, including the foreclosure process in a particular proceeding. The Court further notes that the correct standard in determining the scope of a Rule 2004 examination is whether the examination will produce discoverable information in the case at hand.

///
///
///
///
///
///
///
///


**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the bankruptcy court's order denying Bank of America, N.A.'s motion to quash a subpoena issued by the United States Trustee under Federal Rule of Bankruptcy Procedure 2004 is AFFIRMED in part and REVERSED in part.

DATED: This __7th__ day of December, 2011.

_____
United States District Judge